## GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

## DENNIS RUIZ, Defendant

T. O. Nos. 951/84 and 952/84

Territorial Court of the Virgin Islands

Div. of St. Croix at Kingshill

June 26, 1984

DONALD NEHLSEN, ESQ., Assistant Attorney General (Office of the Attorney General), Christiansted, St. Croix, V.I., *for plaintiff*

EDWARD H. JACOBS, ESQ. (JACOBS AND BRADY), Christiansted, St. Croix, V.I., *for defendant*

SILVERLIGHT, *Judge*

## MEMORANDUM OPINION

The two (2) captioned matters were tried to the Court together on April 12, 1984, and May 24, 1984. Defendant was charged with the offense of Driving While Intoxicated[1] in the one case and with the offense of Negligent Driving[2] in the other.

---

[1] 20 V.I.C. § 493.

[2] 20 V.I.C. § 503.

## INTRODUCTION

On the first day of trial evidence was adduced establishing that defendant was operating his vehicle in a general easterly direction on the North Side Road, Christiansted, St. Croix, at approximately 9:30 p.m. on February 12, 1984. It was further shown that at or about the same time and place, Mr. John San Kitts was operating his vehicle in the same direction when, approximately in front of the Cruzan Motors Salesroom and garage, his car was struck in the rear by the vehicle operated by the defendant. At the time of impact, both cars were moving; Mr. San Kitts' vehicle was simply overrun. After the accident, Police Officer Desmond Crossley arrived at the scene to investigate the occurrence. His investigation disclosed that the impact had occurred in the eastbound lane of the road[3] and that the defendant's vehicle had suffered front end damage and Mr. San Kitts' vehicle had suffered rear end damage.

All of the occupants of both cars had been transported to the hospital before the arrival of Officer Crossley so he proceeded to the hospital for the purpose of interviewing the occupants. Upon his arrival at the hospital, Officer Crossley encountered the defendant lying on a stretcher in one of the emergency room treatment cubicles. When speaking to the defendant, who had suffered a head injury, Officer Crossley noted an odor of alcohol on the defendant's breath and that his speech was slurred. He then placed defendant under arrest for driving while intoxicated and requested the emergency room physician to draw blood for the performance of blood alcohol testing. During the trial, in an effort to lay a foundation for the admission of the laboratory· results of the blood test, the Government attempted to introduce a document which would establish the chain of custody of the blood sample kit. Defendant objected to the admission of this document because the kit itself was not available in Court for use by defendant in his cross examination of the witnesses whose testimony formed the foundation for the proffer of the document. As a result, the trial was recessed and continued in order that the Government could produce the blood alcohol kit.

The trial resumed on May 24, 1984, at which time the Government called the forensic chemist who had performed the blood alcohol test to testify concerning the manner in which she conducted the test and the results thereof. In the course of her testimony, the chemist disclosed that she made entries relating to the conduct of the test

---

[3] The point of impact was ascertained through the presence of debris consisting of dirt and vehicle parts, all within the eastbound lane.

and the results in a log book which was maintained in her laboratory. The laboratory secretary then prepared the report ultimately delivered to counsel from the log book entries, delivered the same to the chemist who checked the report against the log book entries for accuracy and then gave the report to the director of the laboratory who affixed his signature and authorized its release.

On or about April 5, 1984, a week before the commencement of trial, defendant had served a Request for Discovery and Inspection upon the Government which demanded discovery of any Jencks Act material at the time of trial and after the testifying witness had concluded his or her direct testimony.[4] After the forensic chemist had concluded her direct testimony, defendant requested inspection of the aforementioned log book for use during cross examination. When the Government failed to produce the log book (it had not been brought to Court) defendant requested that the chemist's testimony be stricken pursuant to 18 U.S.C. 3500(d).[5] The Court declined to strike the testimony, the Government concluded its case and rested. Defendant, after having made a Rule 29 Fed. R. Crim. P. Motion for acquittal, which was denied, rested.

This Court must address two (2) discrete charges: first, a charge of Driving While Intoxicated in violation of 20 V.I.C. § 493 and second, a charge of Negligent Driving in violation of 20 V.I.C. § 503.

## NEGLIGENT DRIVING

■■ Since the evidence adduced by the Government remained unrefuted when the defendant rested, it is clear that defendant must be found guilty of this charge. Beyond any reasonable doubt, the operator of a motor vehicle who overruns a moving vehicle in front of his vehicle when there is nothing to obstruct his view or interfere with his ability to see such overrun vehicle has operated "in a manner which endangers or is likely to endanger any person or property."

■■ In MacGibbon v. Smalls, 8 V.I. 362, 443 F.2d 522 (C.A. 3d 1971) Judge Adams speaking for the Court in a civil context and citing Baumann v. Canton, 7 V.I. 60 (D.C.V.I. 1968) stated that "It is a well established rule that a motorist must operate his vehicle always with due regard for the safety of all others on the highway. He is charged with the duty of keeping his automobile under such

---

[4] 18 U.S.C. § 3500.

[5] The Court declined to declare a mistrial on defendant's motion because of the double jeopardy implications. Defendant's Motion to Strike was then verbalized.

control that he can stop within the distance on the road ahead which he can clearly see. The law exacts of him constant care and attention and imposes upon him certain positive duties . . . " Certainly no lesser standard of care may be applied in a criminal context.[6]

## DRIVING WHILE INTOXICATED

If the evidence of the defendant's blood alcohol level is excised from the case, it is clear that insufficient evidence to establish intoxication remains. At best the evidence, other than the blood alcohol level, indicates that witness John San Kitts described defendant as "incoherent" — "insensitive to what was going on" at the scene of the accident, that Officer Crossley, when interviewing the defendant at the Hospital, found him lying on a stretcher suffering from a blow to the head, that the officer discerned an odor of alcohol about the defendant, that the defendant's speech was slurred, and that the defendant stated that he had ingested two (2) beers.

Standing alone, this evidence would not establish, beyond a reasonable doubt, that defendant was intoxicated. For this reason, the blood alcohol content evidence assumes great significance for if it is admitted, it is the barometer of intoxication under the statutory scheme.[7] We address ourselves, therefore, to the propriety of the admission of the testimony of the chemist establishing defendant's blood alcohol level, over the objection of defense counsel and contrary to his motion to strike.

As indicated in the introduction, supra, a timely demand for Jencks Act material was made by defendant. At the conclusion of the chemist's direct testimony, defendant demanded disclosure of the log in which the chemist had noted the highlights of the blood tests she conducted and the results thereof, as well, possibly, as other relevant data. The Government failed to produce the log which had not been brought from St. Thomas by the witness. The Court declined to strike the witness' testimony however, notwithstanding defendant's timely motion to strike.

The applicable portions of the Jencks Act, 18 U.S.C. § 3500, provide:

---

[6] In this jurisdiction a traffic violation is a crime or offense. 14 V.I.C. § 1 provides in pertinent part: a "crime" or "offense" is an act committed or omitted in violation of a law of the Virgin Islands and punishable by—
 (1) imprisonment; or
 (2) fine; or . . .

[7] 20 V.I.C. § 493(d).

(b) After a witness called by the United States has testified on direct examination, the court shall, on· motion of the defendant, order the United States to produce any statement . . . of the witness . . . which relates to the subject matter as to which the witness has testified . . . .

(d) If the United States elects not to comply with an order of the court under subsection (b) . . . to deliver to the defendant any such statement, . . . the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interest of justice require that a mistrial be declared.

In analyzing the propriety of its ruling, the Court must first focus on a determination of whether the log entries were "statements" of the chemist, thus falling within the ambit of the Jencks Act provisions.

18 U.S.C. § 3500(e) states in relevant part:

(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him; . . .

Since the entries in the log were written by the chemist, the sole question becomes whether the log was approved or adopted by the chemist.

In United States v. Walden, 465 F.Supp. 255, 260 (1978), a case analogous to the matter at bar, a Drug Enforcement Agency Agent had prepared drafts from which final reports were prepared. The final reports were produced after the witness had testified but the drafts were not. There the court held that:

(2) Since it is beyond doubt that the drafts are written documents, the sole question becomes whether the documents were approved or adopted by Agent Mitchell. In order to approve or adopt a statement, it is not necessary that the witness sign the writing. The standard does require a form of approval comparable to signature. In short, the witness must, in some manner, affirmatively express his assent to the content of the writing.

(3) In the instant case, Agent Mitchell expressed his assent to the content of the drafts when he sent them to his supervisor for review knowing full well that after review by his supervisor, Agent Thomas G. Moore, the drafts would be forwarded to the

444

group secretary for typing. Agent Mitchell signed the typed reports but not the drafts. Since he testified they were identical, it would be an exercise in illogic to hold that he had adopted the former but not the latter. Accordingly, the Court finds that the drafts were approved and adopted by Agent Mitchell and were "statements" within the meaning of the Jencks Act. (Citations omitted.)

Likewise, in the case at bar, the chemist testified that after she personally checked the report pertaining to the blood alcohol tests against the log for accuracy, she delivered the report to her supervisor for his signature to be affixed. In so doing, it is clear that the log notations were both adopted and approved by the declarant.

■ In retrospect, it is clear that the Court erroneously failed to impose the appropriate sanctions mandated by the Jencks Act. That error will now be rectified. Because a mistrial might readily result in a bar to retrial, it not being a necessary sanction, the striking of the chemist's testimony will constitute a permissible, adequate and appropriate sanction as demanded by Jencks. The chemist's testimony will be stricken and disregarded by the Court.

■ As has already been stated, supra, without the blood alcohol evidence, the Government has simply failed to prove beyond a reasonable doubt that defendant operated his motor vehicle while intoxicated. A Judgment of Acquittal will be entered as to this charge.

## JUDGMENT

In accordance with the Memorandum Opinion filed in the above-entitled matter on even date and after trial without a jury, it is

ORDERED, ADJUDGED AND DECREED that the defendant be and he hereby is found NOT GUILTY of the offense of Driving While Intoxicated.

## JUDGMENT

In accordance with the Memorandum Opinion filed in the above-entitled matter on even date and after trial without a jury, it is

ORDERED, ADJUDGED AND DECREED that the defendant be and he hereby is found GUILTY of the offense of Negligent Driving, and it is further

ORDERED, ADJUDGED AND DECREED that sentencing be imposed on July 19, 1984.